ROBERT M. GRANT

*v.*

MARGARET CLARA GRANT.

[Decided December 24th, 1914.]

1. The public is a party to all divorce suits. It does not ordinarily appear by counsel, and when without counsel does not plead. This party, when thus represented by what is called the conscience of the court, never loses a right by laches; a maxim in these suits, therefore, is that a cause is never concluded as against the chancellor.

2. Judgment by default is not favored in divorce suits, and the courts are especially inclined to interpose by opening and setting aside such a judgment and giving defendant a day in court, so that the merits of his defence may be passed upon under such terms and conditions as to the court may seem proper.

3. Divorce cases are not causes in which the usual tests of surprise and merits are required to be shown in order to secure the opening of a default with leave to plead. They are not cases which concern alone the parties, between whom the court is impartial and indifferent, but are cases to which the state is a party, whose interest the court at all times will save and protect.

4. A decree *nisi* is a conditional divorce, becoming absolute only upon the happening of a prescribed contingency. Such a contingency in our state is the non-showing of cause why the decree should not be made absolute. This does not comprehend *ex parte* decrees only, but decrees made in litigated cases as well. Opening a default to let in a defence on the merits is quite a different thing than showing cause against making absolute a decree *nisi*. .

5. It is the universal practice to open a default in a divorce case, not only when a defence comes out in the evidence, but if, after the evidence is taken, the defendant desires to be heard. A defendant who comes forward and says he desires to defend a case for divorce should be given an opportunity to do so at any moment before the chancellor's signature is actually affixed to the final decree, except where a lack of good

faith on the part of the applicant is apparent, which would be the case if it clearly appeared he did not intend to answer after obtaining the right to do so,—his move being merely for delay, prompted by ulterior motive.

6. The court of chancery has the constitutional right to deliberately consider all applications made to it, and there is not discoverable in the Divorce act, which provides for the granting of a decree of divorce *nisi,* any attempt to divest the court of its inherent equitable power to hold under advisement an application for opening a default beyond the time during which cause could be shown against making such a decree absolute, and which action, in effect, enables the court to suspend the force of the decree pending the ultimate disposition of the matter.

7. Default opened upon terms: The decree *nisi* will be vacated only for the purpose of permitting an answer to be filed, and if defendant should be defeated on the merits then the order vacating will itself be vacated, leaving the decree *nisi* to stand as of the date of its entry, so that a final decree could be immediately entered, being already due in point of time. An order for this purpose may be taken at once and shall provide that the defendant answer within ten days.

On application of defendant to open decree *nisi* and for leave to defend.

*Mr. Chauncey G. Parker,* for the petitioner.

*Mr. Peter W. Stagg,* for the defendant.

LEWIS, V. C.

This is an *ex parte* divorce case. The defendant was personally served in New York with notice of an order of publication and a copy of the petition, but did not file an answer, and an order of reference was subsequently made in due course to a special master of the court to ascertain and report as to the truth of the allegations of the petitioner's petition and his opinion thereon. The master was attended by the solicitor of the petitioner and took the depositions of witnesses produced before him, which he returned with the exhibits offered, together with his report, in which he recommended that a decree of divorce should be made pursuant to the prayer of the petition. Thereafter a decree of divorce *nisi* in favor of the petitioner and against defendant was entered. Before the six months' period limited for showing cause against this decree expired the defend-

ant asked leave to open it, to the end that she might be let in to defend the cause, denying the commission of the adultery charged against her and asserting that she consulted a lawyer after service upon her, but that he did not care to undertake the defence because she had no money with which to pay him, and that she was not aware of the fact that her husband could be compelled to provide her defence under the compulsory order of the court. This latter statement is undoubtedly untrue, as appears from affidavits submitted on this motion; and, too, her adultery appears quite abundantly proved in the depositions taken *ex parte*, but this is not conclusive against her on this application.

In deciding the matter under consideration it will not be necessary to review any of the numerous cases in this and other states where defaults in divorce cases have been opened even after a *final* decree has been pronounced. Here is a case where the divorce is not consummate, but only *inchoate*. The decree *nisi* not having the attribute of finality.

The position of the public, in divorce cases, represented sometimes by counsel and always by the court, is well stated in *2 Bish. Mar., Div. & Sep. 663*, as follows:

"The public, which we have seen to be a party in all divorce suits, occupies a unique position, sometimes embarrassing to the court. It does not ordinarily appear by counsel, and when without counsel does not plead. As against this party, when only thus represented by what is called the conscience of the court, the plaintiff is entitled to the decree on his case being duly and fully proved. But this party, unlike the others, never loses a right by laches; and so, whenever a defence comes out in the evidence, whether alleged or not, it is fatal to the proceeding. A maxim in these suits, therefore, is, that a cause is never concluded as against the judge; and the court may, and to satisfy its conscience sometimes does, of its own motion, go into the investigation of facts not contested by pleadings."

By reason of the public interest in a divorce case, says the same learned author (volume 2, section 669), the court should be especially inclined to set aside a default. And in *14 Cyc. 714*, it is stated that:

"Since a judgment by default is not favored in divorce suits, the courts are especially inclined to interpose by opening or setting aside such a judgment and giving defendant a day in court so that the merits of his

defence may be passed upon, under such terms and conditions as to the payment of costs and alimony as to the court may seem proper.

\*        \*        \*        \*        \*        \*        \*        \*

"It has been said that the rule that a default will not be opened to permit a defence to be interposed which is not meritorious is not vigorously applied in divorce suits." \*  \*  \*

These are not cases in which the usual tests of surprise and merits are required to be shown in order to secure the opening of a default with leave to plead. They are not cases which concern alone the parties between whom the court is impartial and indifferent; but are cases to which the state is a party, whose interest the court at all times will save and protect.

A decree *nisi* is a conditional divorce, becoming absolute only upon the happening of a prescribed contingency. *14 Cyc. 711.* Such a contingency in our state is the non-showing of cause why the decree should not be made absolute.

In *Bidd. N. J. Div. Pr. (2d ed., 1912)*, at *p. 139*, speaking of showing cause, it is stated:

"The common causes shown are: 1. Matrimonial misconduct of the party holding the decree. 2. Reconciliation of the parties, and resumption of cohabitation since the date of the decree. 3. Suppression at the trial of facts which are material; for if immaterial, though purposely suppressed, the decree will be made absolute; but if material, though unintentionally withheld, the decree may be rescinded."

I think it is the universal practice to open a default in a divorce case, not only when a defence comes out in the evidence, but if, after the evidence is taken, the defendant desires to be heard. In my judgment, a defendant who comes forward and says he desires to defend a case for divorce should be given an opportunity to do so at any moment before the chancellor's signature is actually affixed to the final decree. The only limitation I can think of would be an apparent lack of good faith on the part of the applicant, which would be the case if it clearly appeared he did not intend to answer even after obtaining the right to do so—his attempt being merely for delay prompted by ulterior motive.

Since the making of the application to open the default in this case the six months has run out during which the statute

(*P. L. 1907 p. 474 § 21*) permits cause to be shown against making the decree *nisi* absolute, and, were it not for the court holding the pending motion under advisement, the petitioner would have been entitled to, and, doubtless, would have had his final decree. But this efflux of time, under the circumstances, does not entitle the petitioner to his final decree so as to prevent the court from efficaciously disposing of the motion to open the decree *nisi*. The court of errors and appeals, in the recent case of *St. Vincent's Church* v. *Borough of Madison, June term, 1914* (not yet reported), held that:

"A justice of the supreme court has the constitutional right to deliberately consider all applications made to him, and it is not within the power of the legislature to limit this constitutional right so as to defeat the ends of justice, nor is there discoverable in the section mentioned any such legislative intention. If an application were made to a justice of the supreme court for the allowance of a *certiorari* on the last day on which it could be allowed, and, if the application presented a question of doubt and difficulty which it was necessary for the justice to take under advisement, and if, for that reason alone, or by reason of his other judicial engagements, it was impossible for him to decide for or against the allowance until a day later than the time limited for the allowance of the writ, still it could be lawfully allowed and issued."

So, likewise, the court of chancery has the same constitutional right to deliberately consider all applications made to it, and there is not discoverable in the Divorce act, which provides for the granting of a decree of divorce *nisi,* any attempt to divest the court of its inherent equitable power to hold under advisement an application for opening a default beyond the time during which cause could be shown against the making such a decree absolute, and which action, in effect, enables the court to suspend the force of the decree pending the ultimate disposition of the matter.

In my judgment, the default in this cause should be opened upon terms, as follows: The decree *nisi* will be vacated only for the purpose of permitting the defendant to answer, and if she should be defeated on the merits, then the order vacating will

itself be vacated, leaving the decree *nisi* to stand as of the date of its entry, so that a final decree could be immediately entered. An order for this purpose may be taken at once and shall provide that the defendant file her answer within ten days. With the cause thus at issue the petitioner, equally with the defendant, will be at liberty to move for a speedy final hearing.