## CLARA LOEB, PLAINTIFF-RESPONDENT, v. WILLIAM A. LOEB, DEFENDANT-APPELLANT.

Argued September 26, 1967—Decided November 6, 1967.

*Mr. Morris M. Schnitzer* argued the cause for appellant (*Mr. Nathan A. Whitfield,* attorney; *Mr. Waldron Kraemer,* on the brief).

*Mr. Benjamin D. Braelow* argued the cause for respondent.

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of the Appellate Division.

GOLDMANN, J. (temporarily assigned) (dissenting). The single question presented for resolution on this certified appeal is whether plaintiff wife, who prevailed in her divorce action may in the circumstances of this case, at will and without advancing any cause whatever, have her judgment *nisi* vacated. The Chancery Division denied that relief, 89 *N. J. Super.* 568 (1965); the Appellate Division

reversed the determination on appeal, 91 *N. J. Super.* 333 (1966). In light of the factual setting presented, I would reverse and reinstate the Chancery Division judgment.

I

The parties were married in 1930. Two children were born; at the time of the hearing the son was 31 years old and emancipated, the daughter 17 and attending high school. Defendant is a physician and surgeon, plaintiff a housewife. The marriage was not a happy one, at least after the first ten years. It deteriorated to the point where plaintiff instituted a separate maintenance action in September 1962 (*Docket* M–203–62). At that time she and her daughter moved to California, remaining there until mid-July 1963, when they returned to New Jersey. The maintenance action was dismissed in October 1963.

In August 1964 plaintiff filed her complaint for divorce on the ground of extreme cruelty. Defendant answered, denying every allegation of cruelty and reserving the right to file a counterclaim. In regular course plaintiff obtained a *pendente lite* order for the support and maintenance of herself and the daughter, and for counsel fees. Defendant's counterclaim for divorce on the ground of extreme cruelty followed. Plaintiff at once filed an amended complaint, adding a count alleging that defendant had committed adultery with a Mrs. X, who was then being sued by her husband for divorce on the ground of desertion. (Mr. X obtained his final judgment of divorce in July 1965.) Defendant answered, again denying all charges. Mrs. X was admitted as a party defendant and filed an answer denying the alleged adultery. The action proceeded to hearing on June 8, 1965 after plaintiff had answered the counterclaim and denied its allegations of cruelty.

Plaintiff chose to present her case on the extreme cruelty count only, offering no proof on the adultery charge. Her complaint had described defendant's cruelty over a 23-year

period in a lengthy, generally phrased paragraph, followed by some 50 paragraphs specifically describing each of the acts relied upon. At the trial, however, the judge directed counsel to deal with the more recent acts, beginning with the one in early 1962 (complaint, paragraph (bb)). After plaintiff had rested defense counsel stated he had been instructed to withdraw the counterclaim, and accordingly moved its dismissal. There being no objection, the motion was granted, the judge then announcing he was satisfied that a case of extreme cruelty had been fully proved and that the adultery count would be dismissed. On June 25, 1965 he entered judgment *nisi* in plaintiff's favor. She was awarded custody of the daughter, subject to defendant's reasonable visitation rights. The matters of maintenance and support, as well as counsel fees and costs, were reserved until further order. The adultery count was dismissed.

On June 30 the trial judge wrote counsel he was postponing final determination of maintenance and support until after final judgment and sale of the marital home, but would meanwhile allow plaintiff $75 a week and $25 for support of the daughter. Plaintiff's then counsel was granted a $1,250 fee, including the *pendente lite* allowance, together with taxed costs.

On September 21, 1965, four days before the *nisi* would have become final, plaintiff, by her present (substituted) attorney, filed an affidavit asserting that she had engaged in sexual relations with defendant several times since the trial, one such occasion being on August 18, 1965. She stated that she now desired to vacate the judgment *nisi*. An order to show cause issued, staying entry of final judgment and setting the matter down for argument on October 1, later continued to October 15, 1965.

In the meantime, defendant filed an affidavit flatly denying plaintiff's claim of sexual relations and alleging that her attempt to reopen the proceedings was "malicious and deliberate with the intent to harass and bedevil me." He was prepared to submit to any examination to the end that the truth

be ascertained. His answering affidavit revealed that an order amending the judgment *nisi* to provide for the payments mentioned in the trial judge's June 30 letter had been submitted to plaintiff's counsel, but plaintiff would not authorize him to consent to the form of the order. Defendant had nonetheless continued to make the payments called for by the *pendente lite* order.

In a reply affidavit filed the day before the October 15 hearing plaintiff repeated her claim of having had sexual relations with defendant since the trial, and specifically on August 18. She stated:

"I have decided to withdraw the judgment nisi that was issued to me dated June 25, 1965, and I am willing to appear to defend the counterclaim filed herein, and if my application is granted, I will ask my attorney to make application to amend my complaint from divorce to separate maintenance."

At the very start of the October 15 hearing the trial judge announced that the subject matter was such that he would not decide it on affidavits but wanted to hear testimony. Plaintiff's counsel argued that his client could, as a matter of right, change her mind. When the judge pointed out that her affidavit alleged sexual relations with defendant after entry of the judgment *nisi,* her counsel said he would "withdraw that part of it," and "I will consent to expunging the affidavit and just have her say that she changed her mind, and she does not want her divorce." The judge allowed the affidavit to be expunged, adding that plaintiff "can take whatever steps are necessary to avail herself of a woman's right to change her mind. It has to be done by some sort of pleadings."

Plaintiff then filed an affidavit stating she was withdrawing her allegation of sexual relations with defendant and was proceeding on her application to vacate the *nisi* "for the reason that I have changed my mind and do not wish the divorce." There was a further hearing on October 25, 1965. Plaintiff's attorney had prepared an order setting aside the

*nisi* and submitted it to defense counsel for his consent. The latter objected to the order, stating that the matter had never been argued. The trial judge thereupon directed the court reporter to prepare a transcript of the October 15 hearing. The matter was again heard on November 18, on plaintiff's motion to amend so as to change the cause of action from divorce to separate maintenance, and for an order vacating the judgment *nisi*. Defendant, in turn, moved to permit entry of a final judgment of divorce.

The trial judge delivered his oral conclusions on November 29, 1965, later formalized in the opinion published in 89 *N. J. Super.* 568. He held that plaintiff was not entitled as a matter of right to refuse the judgment *nisi* and have it vacated without a showing of "sufficient cause," as required by *R. R.* 4:98–7. She had failed to establish such cause. After reviewing the public policy considerations involved and some of the cases, the judge concluded that

"Nothing but reconciliation or other sufficient cause should now bail her out. To do otherwise is to take a path fraught with the possibility of battery or worse, adultery, illegitimacy, foreign divorce decree, ill effect on children of the union, to mention but a few." (at *page* 576)

He denied plaintiff's motion to vacate the *nisi* and sustained the judgment on the extreme cruelty count. He directed that the *nisi* be amended to make the dismissal of the adultery count with prejudice. The counterclaim was to remain dismissed without prejudice. The claim of condonation, as to which the burden of proof rested on plaintiff, needed no further action than the entry of an order to the effect that the claim was withdrawn. Finally, he denied her motion to amend so as to change the cause of action from divorce to separate maintenance. Conformable orders were entered December 8, 1965.

On appeal the Appellate Division affirmed the trial judge's determinations, with one exception. 91 *N. J. Super.* 333. It could not agree with his holding that a plaintiff who had ob-

tained a *nisi* could not at will abrogate that judgment upon signifying such intent to the trial court prior to the running of the three-month period specified in the statute, *N. J. S.* 2A:34–19. It adhered to the decisions in *Ferrari v. Ferrari,* 6 *N. J. Super.* 384 (*App. Div.* 1950), and *Iovino v. Iovino,* 58 *N. J. Super.* 138 (*App. Div.* 1959). The court was of the opinion that the State's interest in the maintenance of the matrimonial relationship, repeatedly stressed as fundamental in our public policy, "constitutes in and of itself the 'sufficient cause' requisite under *R. R.* 4:98–7 to abate the judgment *nisi* when that step is sought by the successful party." (at *page* 335) The matter is now before us on certification granted, 48 *N. J.* 144 (1966).

## II

Our present judgment *nisi* practice originated in the 1907 revision of the Divorce Act, *L.* 1907, *c.* 216, §§ 20 and 21, which provided:

"20. If after the hearing of any cause, or after a jury trial resulting in a verdict for the plaintiff, the court shall be of opinion that the plaintiff is entitled to a decree annulling the marriage, or a decree for divorce from the bonds of matrimony, a decree *nisi* shall be entered.

21. A decree *nisi* shall become absolute after the expiration of six months from the entry thereof, unless appealed from or proceedings for review are pending, or the court before the expiration of said period for sufficient cause, upon its own motion, or upon the application of any party, whether interested or not, otherwise orders; and at the expiration of six months such final and absolute decree shall then be entered upon application to the court by the petitioner, unless prior to that time cause be shown to the contrary. Appeals shall be taken only from the decrees *nisi* and not from the final decrees, and shall be taken within six months from the filing of the decree *nisi*."

*L.* 1927, *c.* 60, amended section 21 in only one respect, by changing "six months" to "three months." Section 21 was carried over into the *Revision of* 1937 as *R. S.* 2:50–30, except for the last sentence, which became *R. S.* 2:50–31. *R. S.* 2:50–30 eventually became *N. J. S.* 2A:34–19:

"A judgment *nisi* shall become final after the expiration of 3 months from the entry thereof, unless an appeal or a proceeding for review has been taken and is pending, or unless the court before the expiration of such period for sufficient cause, upon its own motion, or upon the application of any party, whether interested or not, otherwise orders."

The language of *R. R.* 4:98–7 (formerly *Rule* 3:87–5) parallels that of *N. J. S.* 2A:34–19 by providing that

"In every action for absolute divorce or for nullity of marriage the final judgment shall be entered by the clerk, as of course, immediately upon the expiration of 3 months from the entry of the judgment *nisi*, unless that judgment be appealed from or proceedings for review are pending, or the court before the expiration of said period, for sufficient cause upon its own motion or upon the application of any party, whether interested or not, otherwise orders."

For the past 60 years, therefore, the Divorce Act and latterly our rule of court have provided that a *nisi* would become final after the expiration of three (formerly six) months unless a proceeding for review had been taken and was pending, or unless the court before the expiration of that period "for sufficient cause," upon its own motion or upon application of any party, whether interested or not, otherwise ordered.

The prototype of the divorce *nisi* practice may be found in England's Matrimonial Causes Act of 1860, 23 & 24 *Vict., c* 144, § 7, which provided that the court should in the first instance enter a decree *nisi,* to be followed by a decree absolute if no objection were raised within a period of three months (extended to six months in 1866, reduced to six weeks in 1946, and finally increased to three months in 1965). Any person could show cause why the decree should not be made absolute "by reason of the same having been obtained by collusion or by reason of material facts not having been brought before the court." (The Matrimonial Causes Act of 1965, *c.* 72, § 7, provides that "any person (excluding a party to the proceedings other than the [Queen's] Proctor) may show cause * * *.") The present

act provides that in any such case the court may make the decree absolute, rescind the decree *nisi,* require further inquiry, or otherwise deal with the case as it thinks fit. And see 12 *Halsbury's Laws of England* (*3d ed.* 1955), § 922; *Report of the Royal Commission on Marriage and Divorce,* 1951–1955. The matter could be referred to the King's (Queen's) Proctor for investigation and later intervention at the direction of the Attorney General. In addition to such causes as collusion or material facts not having been brought before the court, condonation of the matrimonial offense or adultery on the part of the successful spouse were grounds for vacating the *nisi. Halsbury, op cit.,* §§ 922, 923, 924 and 926.

The decree *nisi* was imported into our statutory law as a result of a recommendation contained in the *Report of the Commissioners Appointed to Attend the Uniform Divorce Law Congress as Delegates for the State of New Jersey* (January 1907), reproduced in *Biddle's New Jersey Divorce Practice* (*2d ed.* 1912), *Appendix* II. The commissioners had at the Governor's request prepared a revision of our divorce laws, incorporating provisions of the act recommended by the Uniform Divorce Law Congress for adoption by the states, and making necessary changes in our existing law. Among the changes recommended by the commissioners was one providing that in suits for absolute divorce the decree made in the first instance was to be a decree *nisi,* to become absolute after a year. If this change were adopted, said the commissioners, "it would be some protection against the obtaining of decrees of divorce by collusion or fraud, and prevent the scandalous haste in remarriages which sometimes occur." See *Biddle,* at *pages* 359–360. The Divorce Act of 1907, *c.* 216, § 21, as noted, fixed the *nisi* period at six months.

Biddle, who can fairly be said to be the one who was best informed as to the purposes of the 1907 Divorce Act, had the following to say with regard to showing cause under section 21 of the act:

"The common causes shown are:—1. Matrimonial misconduct of the party holding the decree. 2. Reconciliation of the parties. and resumption of cohabitation since the date of the decree. 3. Suppression at the trial of facts which are material; for if immaterial, though purposely suppressed, the decree will be made absolute (h); but if material, though unintentionally withheld, the decree may be rescinded."

Footnote (h) states that "Collusion may be said to be an exception. *Sheehan v. Sheehan,* 77 *N. J. Eq.* 411 [*Ch.* 1910]."

The Biddle text was quoted in *Grant v. Grant,* 84 *N. J. Eq.* 81, 84 (*Ch.* 1914), and adopted in *Child, New Jersey Divorce* (*2d ed.* 1932), at *page* 212, with the addition of fraud as a fourth common cause.

The latest authoritative text on the subject, 12 *N. J. Practice* (*Herr, Marriage, Divorce and Separation*) (*3rd ed.* 1963), § 2374, *p.* 543, repeats these categories—and none other—in discussing what constitutes "sufficient cause" under *R. R.* 4:98–7, with citations to supporting cases:

(1) Matrimonial misconduct of the party holding the judgment, adultery ordinarily being the only offense urged. *Helbig v. Helbig,* 103 *N. J. Eq.* 348 (*E. & A.* 1928); *Pfender v. Pfender* 104 *N. J. Eq.* 107 (*Ch.* 1929), affirmed o. b. 105 *N. J. Eq.* 247 (*E. & A.* 1929).

(2) Reconciliation of the parties and resumption of cohabitation since the date of the judgment, *Steinmetz v. Steinmetz,* 87 *N. J. Eq.* 313 (*E. & A.* 1915), or prior to entry of the *nisi* where the court was uninformed. The reconciliation should amount to a complete condonation.

(3) Suppression of material facts at the trial. *Grant v. Grant* and *Pfender v. Pfender,* above.

(4) Collusion, *Griffiths v. Griffiths,* 69 *N. J. Eq.* 689 (*Ch.* 1905).

## III

The judgment *nisi* practice has been adopted in a number of states. The *nisi,* of course, does not in and of itself end the marriage. The marital bond persists until entry of final judgment. The *nisi* has been termed a conditional judgment of divorce, *Dacunzo v. Edgye,* 33 *N. J. Super.* 504, 513 (*App. Div.* 1955), affirmed 19 *N. J.* 443, 449 (1955), becoming ab-

solute only upon the happening of a prescribed contingency. The contingency in our State is the absence of a showing of cause why the judgment should not become final. *Sobel v. Sobel*, 99 *N. J. Eq.* 376, 378 (*E. & A.* 1926) ; *Grant v. Grant*, 84 *N. J. Eq.* 81, 84 (Ch. 1914). As already stated, any party, whether interested or not, may demonstrate "sufficient cause" before the expiration of the *nisi* period, or the court may act upon its own motion. *N. J. S.* 2A:34–19; *R. R.* 4:98–7.

Until the coming down of the decisions in *Ferrari* and *Iovino,* no cause was deemed sufficient, other than the four recognized by the cited authorities, Biddle, Child and Herr. Those two cases, and now this one, make judgments *nisi* completely tentative because subject to revocation by a successful litigant who need state no other reason than a mere change of mind. Thus, the court in *Ferrari* said that "plaintiff's timely request for the dismissal of her action" was, without more, sufficient cause under the rule. 6 *N. J. Super.,* at *page* 387. *Ferrari* was followed in *Iovino*. In the present case the Appellate Division was of the view that the State's interest in the maintenance of the matrimonial relationship constitutes in and of itself the "sufficient cause" required to abate the judgment *nisi* on the application of the successful party. 91 *N. J. Super.,* at *page* 335. Indeed, this latter factor emerges as the real reason for the doctrine enunciated in *Ferrari* and the out-of-state cases upon which it relied.

It appears that the *Ferrari* court advanced three grounds for its decision: (1) the strong public policy favoring continuance of marriage and disfavoring divorce; (2) the "long standing practice" in this State which permits a divorce petitioner to dismiss the suit at any time up to the entry of the final judgment where no answer had been filed, citing as authority *Child, New Jersey Practice, p.* 216 (1929), and (3) Massachusetts, Rhode Island and Delaware precedents. These will be considered in reverse order.

Close examination of the precedents cited in *Ferrari,* as well as others that may be found in the annotations appearing in 109 *A. L. R.* 1005 (1937) and 174 *A. L. R.* 519

(1948), indicate that the results reached were essentially grounded in the public policy which favors preservation of the marital relation. So viewed, they may be subsumed under the first reason advanced in *Ferrari*.

As for the second ground, research fails to establish a "long standing practice." Child cites no New Jersey authority for his statement that a petitioner can, even where no answer has been filed, "dismiss the suit at any time up to the entry of the final decree." It may be observed that his text was published in 1929; the decree *nisi* first came into our practice in 1907. None of the editions of Herr's work, which first appeared in 1938, the third edition being published in 1963, refers to any precedent prior to *Ferrari*.

As for the more fundamental reason that public policy favors the continuance of marriage and disfavors divorce, there can be no question that the policy is a strong and continuing one, basic to every matrimonial action. One of the important objects of the *nisi* practice is to provide a so-called "cooling off" period and a last opportunity for reconciliation. Where there has been reconciliation and a resumption of cohabitation following entry of the judgment *nisi*, obviously no final judgment may be entered. Viewing the stated policy in its other aspect—disfavor of divorce—since the *nisi* does not of itself put an end to the marital relation, adultery by the successful party during the *nisi* period forecloses all right to final judgment. And, of course, collusion or fraud upon the court because material facts had been suppressed at the trial must result in a dismissal of the *nisi*.

We are not here concerned with defendant's position in the matter; it was plaintiff who initiated the present proceeding. There is never a word, either in her papers or in the argument advanced by her attorney, about reconciliation or the possibility or hope of reconciliation. Indeed, she presently asks permission to amend her cause of action from divorce to separate maintenance so that she may further pursue defendant.

The State has every interest in preserving the marital bond where there is even a suggestion of reconciliation. No such possibility appears here. The marriage is dead. That being so, the State's only concern should be to give it a proper burial instead of insisting on a state of unholy deadlock.

That the marital relation is beyond recall is manifest from the pleadings and the proofs. They show that since 1941 plaintiff has been subjected to continuing mistreatment by her husband, in deed and in word. The catalogue of acts charged is long, and some of them, if believed (and the trial judge did believe plaintiff and her daughter) demonstrate defendant's cruelty and callousness in the extreme. In her original complaint plaintiff also suggests infidelity on defendant's part and hints at homosexuality. The amended complaint charges adultery outright.

Plaintiff may have endured all this and lived on in quiet desperation out of concern for the welfare of her growing daughter. Finally, however, the situation hardened into litigation; it has now become solidified by the friction and antagonism of defendant's pleaded counter-attack and because of the trial itself. The judgment *nisi* simply adjudicated what had long been manifest: the marriage is bankrupt.

It is neither realistic nor does it comport with the social interest to speak, as did the appellate court, of the policy favoring maintenance of the marital relation—at least in a case like this. Nelson, in the third volume of his *Divorce and Annulment* (2d ed. 1945), § 2807, *pages* 133–134, reflects a view more reasoned and responsive to the crippling influence of an adjudicated marital failure:

"The law, it is said, favors a reconciliation of the parties to a marriage even after divorce is filed and granted by interlocutory decree. In this it is somewhat meddlesome, old-maidish and contrary to sound human experience and statistics; but the principle sounds benign and sanctimonious, so it will probably be reiterated in the future as in the past because it rings so beautifully even though it is so demonstrably false in precept. After the parties to a marriage have reached the bill for divorcement stage, they rarely get together

again except for the temporary gratification of their passions, and then only until one or the other of them remembers what went on before and calls on the nearest counsellor at law. Occasionally, of course, there is an actual reconciliation and forgiveness. In that event, if the court is advised of it, a final decree of divorce should not be entered."

Insofar as New Jersey is concerned, Nelson's observation is no mere speculation. Our State experimented with reconciliation under judicial auspices when it adopted *R. R.* 4:94A in June 1957. The rule was to remain in force for a period of three years unless extended or revoked. It was formally deleted as of July 1, 1960, evaluation of the program having indicated that it had been effective in less than 3% of the cases. If efforts at reconciliation produce so meagre a result when exerted prior to the litigation being permitted to go beyond the filing of the complaint, how much more improbable would reconciliation be after the matter had been fully tried out and a *nisi* entered. In light of our recent experience it would indeed be idle to say that an otherwise sound policy favoring preservation of marriages would in any way be benefitted or advanced by permitting plaintiff to recall her judgment *nisi* in the circumstances here present.

Although a majority of the courts that have dealt with the issue under consideration have, on the basis of public policy, held that the successful spouse has the right to vacate the judgment *nisi* upon timely application, without more, others have reached a contrary result. These courts have been more concerned with the integrity of the judicial process than in preserving for the litigant a unilateral option to reverse a judgment reached after thoughtful consideration of the proofs.

Maine's highest court adopted the rule of good faith in *Deblois v. Deblois,* 158 *Me.* 24, 177 *A. 2d* 199 (*Sup. Jud. Ct.* 1962):

"Good faith is the criterion to be applied to the motives of the cross-complainant in judging her motion to dismiss. If her inten-

tions were sincere in that she desired to attempt reconciliation to resume a marital relationship with her husband; to participate with him in making a home for the children so that they can enjoy their natural right to have the love, care and guidance of a father and mother, then her motion should receive favorable consideration. On the other hand, if it is determined her act of filing the motion to dismiss resulted from a dissatisfaction with the outcome of the case and by this procedure she hoped to vacate the judgment of the Court, then a denial of her motion would be in order. The Court is entitled to have the respect of litigants in divorce cases to the end that they come to the forum in good faith and with fidelity of purpose." (158 *Me.*, at *page* 30; 177 *A.* 2d, at *page* 202)

The same view has been reflected in New York decisions. In *Shinkman v. Shinkman,* 72 *N. Y. S.* 2d 579 (*Sup. Ct.* 1947), affirmed without opinion 273 *App. Div.* 766, 75 *N. Y. S.* 2d 659 (*App. Div.* 1947), the court said:

"Discontinuance of a matrimonial action, unlike other actions, is a matter addressed to the discretion of the court. Good reasons based upon good faith and sincerity should be shown. * * * After giving testimony before an Official Referee as to the defendant's adultery, plaintiff now seeks to nullify all the proceedings in this action upon grounds which negative good faith. No question of any possible reconciliation is presented. Financial considerations solely motivate plaintiff's application. The facts do not warrant the exercise of the Court's discretion in plaintiff's favor. * * *" (72 *N. Y. S.* 2d, at *pages* 579–580).

And in *Armstrong v. Armstrong,* 176 *Misc.* 240, 25 *N. Y. S.* 2d 595 (*Sup. Ct.* 1941), plaintiff wife moved to vacate the interlocutory judgment of divorce and to permit service of an amended complaint praying for a separation. Her motion was not based upon a possibility of reconciliation but rather upon her suspicion that defendant would marry the co-respondent, with the result that their son would be in her company when visiting his father. The court held that

"It seems apparent that where a wife seeks to discontinue a marital action, even after final decree, as in the latter case, if she is acting in good faith and is genuinely seeking a reconciliation with her spouse, the courts are inclined to favor her petition. The policy of the court is to encourage reconciliations and thus support, strengthen and sustain American family life, in which divorce with its attendant

sorrows and evils is all too frequent. And, of course, in many instances the granting of such relief terminates the litigation.

But in the case at bar, the plaintiff is not seeking to vacate the interlocutory decree so that she may attempt to effect a reconciliation with her husband. She is seeking instead a different kind of relief against him which is born out of a feeling of hostility toward the co-respondent. In place of a divorce, she desires a separation. Thus, in place of this litigation ending, it continues in another form.

\*     \*     \*     \*     \*     \*     \*     \*

The time-honored privilege of a woman to change her mind may not be permitted in this case. Motion denied." (25 *N. Y. S. 2d*, at *page* 597)

The Nebraska Supreme Court in *Carpenter v. Carpenter*, 146 *Neb.* 140, 18 *N. W. 2d* 737 (1945), held that although the successful wife had a statutory right to have her decree *nisi* set aside, that right was not an absolute but a qualified one. She had accepted certain benefits under a property settlement and had not expressed any hope for reconciliation. The court refused to vacate the *nisi* because good reason had not been shown.

It bears repetition that plaintiff has given no reason for vacating the judgment *nisi* except a change of mind and a desire to abandon her divorce proceedings for an action seeking separate maintenance. Pascal has said that "The heart has its reasons, which reason does not know." *Pensees,* 227. Plaintiff has alleged no reason of the heart or, in fact, any cause that should move the equitable conscience of the court. She must have grounds more relative than a woman's claimed right to change her mind.

Inquiry at oral argument elicited the information that there had been a property settlement between the parties. It fell through. The money motive cannot be dismissed as plaintiff's reason for abandoning her divorce action. She apparently sees a greater advantage in separate maintenance, with defendant paying support and other charges while she preserves any interest she might presently have in real property owned by both parties. Again, plaintiff may be acting in a spirit of revenge, or out of pique or jealousy, since

there exists the possibility of defendant's marrying another—perhaps the alleged co-respondent. In this connection it is not inappropriate to note again that the co-respondent's husband obtained his divorce decree in July 1965, shortly before plaintiff changed her attorney and her mind.

It could be argued, hypothetically, that a plaintiff wife might abjure her final judgment because she does not want her daughter, during visitations with the father, to be exposed to the company of his alleged paramour or, indeed, any other woman he might consort with or marry. No such claim is advanced here. Moreover, the matter could readily be controlled by a court order directing, in a proper case, that visitations be so arranged as to avoid any such encounter.

Again, the argument might be advanced (it is not here) that the wife would be concerned about her husband not meeting the payments ordered by the court because of other obligations—remarriage, for example. But such an eventuality is always present when a wife chooses to proceed to judgment *nisi*. Moreover, the order to pay may be enforced by contempt proceedings. In any event, a plaintiff should know that support and maintenance are always subject to further order of the court in light of subsequent developments and the circumstances of the parties.

Another argument that might hypothetically be urged is that a successful party would want the judgment *nisi* vacated because of religious scruples. This might be a sufficient cause in a situation where the party, following entry of the *nisi*, embraced another religion which forbids divorce. But no such claim is advanced here.

## IV

To insist upon the *Ferrari* rule in the factual setting of this case would undermine basic public policy and produce socially unacceptable results. In the area of public policy there would be a stultification of the judicial process itself. Plaintiff had no hesitation in resorting to the court and

using its procedures to the full. To permit her, whether motivated by greed, malice or caprice, to vacate the judgment *nisi* would be to permit an experiment in litigation and a misuse of the courts. We should not suffer debasement of the judicial process and judicial image at plaintiff's whim.

There are other policies to be considered. A unilateral vacation of the judgment *nisi* would only foster further litigation. Plaintiff is, in fact, ready and determined to take a first step in that direction by instituting a separate maintenance action. Were reconciliation at all probable, and it is not, continued litigation would surely make it impossible. Further, and as the trial judge observed, to maintain this marriage could lead to adultery, illegitimacy, or resort to another forum in search of a divorce decree. If nothing more, it would deepen the frustrations of the parties and increase their discord, with possible continuing ill effects upon the daughter.

In my view, no state interest is served by vacating the *nisi*. True public policy demands the severance of a marital bond which has been and continues to be intolerable.

V

Following certification of the appeal, plaintiff filed a motion in this court asking that we determine whether the parties had sexual relations after the final hearing in the Chancery Division. It is to be remembered that she abandoned that allegation when the trial judge indicated he would not decide the matter on affidavits, but wanted testimony.

Plaintiff would blow hot and cold. She assumes that she should be permitted to take one factual position, litigate the matter all the way to this court and then, if dissatisfied with the result here, pursue her desired end on other grounds. The situation is of her own making; I would leave her exactly where she is. If plaintiff believes that she may now renege on her abandonment of the post-*nisi* sexual relations

claim, she may try her fortune before the Chancery Division judge.

*For affirmance*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, SCHETTINO and HANEMAN—5.

*For reversal*—Justice GOLDMANN—1.