**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4032-24

ANDREW C. GILBERT,

      Plaintiff-Respondent,

v.

LISA M. FITZGERALD,

      Defendant-Appellant.

_____

Argued May 27, 2026 – Decided June 15, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0133-25.

Amy L. Sauter argued the cause for appellant (Pescatore & Sauter, attorneys; Amy L. Sauter, on the briefs).

Rebecca E. Frino argued the cause for respondent (Mandelbaum Barrett PC, attorneys; Rebecca E. Frino, on the brief).

PER CURIAM

In this dissolution matter, defendant Lisa M. Fitzgerald appeals from a Family Part judge's July 18, 2025 order denying her motion to vacate the final judgment of divorce (FJOD) under Rule 4:50-1(a) and (f).  In addition, defendant alleges plaintiff Andrew C. Gilbert failed to serve the required notice under Rule 5:5-10 for final judgment after default was entered, depriving her of the marital portion of plaintiff's military pension, support, and other relief.  Because defendant met the standard to vacate the FJOD under Rule 4:50-1(a) and (f), we reverse, vacate the FJOD ab initio, and remand for further proceedings.

## I.

The parties were married on January 25, 2015.  There were no children born of the marriage.  Plaintiff began his military career in 2012, and was still actively serving in the military when he filed a complaint for divorce based on irreconcilable differences on July 23, 2024.  Plaintiff is an E-7—gunnery sergeant—the highest non-commissioned rank of the United States Marine Corps.  Plaintiff thus served ten of his then twelve years in the Marine Corps while married to defendant.  Plaintiff was a New York resident when the complaint was filed and now resides in Florida.

2

On January 21, 2025, defendant was served with the divorce complaint while recuperating from a tragic train accident that required amputation of her right leg. The complaint states defendant was a bona fide resident of Hudson County at the time the cause of action accrued. Defendant was served at her mother's home in Queens, New York, which was not defendant's primary residence. She was "heavily sedated" when she was served. Defendant claims the process server used a flower delivery from a "secret admirer" to enter her abode at the time. According to defendant, the complaint was the only document she ever received prior to the entry of the FJOD. Defendant alleges she did not understand the "impact" of the papers and "discarded" them.

Defendant did not file an answer or responsive pleading. On March 17, 2025, plaintiff requested entry of default. The affidavit of service in support of default did not include green cards or certified mail receipts. On March 19, 2025, the FJOD was entered. The FJOD states "plaintiff complied with R[ule] 5:5-10," and a notice of proposed FJOD was "filed and served" upon defendant. Defendant now challenges that she was served.

On May 12, 2025, defendant's counsel filed a notice of appearance. Soon thereafter, defendant's counsel attempted to file a complaint for divorce, which was rejected by the clerk's office because default had been entered. On May 29,

3

2025, nearly three weeks after the notice of appearance was filed by defendant's counsel, plaintiff's former counsel filed an affidavit of service stating copies of the "notice of proposed judgment" and "proposed judgment of divorce" were "served" upon defendant at a Hudson County address by "regular mail."

On June 23, 2025, defendant filed a motion to vacate the FJOD. Defendant argued plaintiff and his attorney "conjoined" to deprive her of her rights, failed to serve proper notice for final judgment pursuant to Rule 5:5-10, committed "abject fraud" upon the court by affirming all marital property had been divided, and represented that a property settlement agreement (PSA) had been agreed to by the parties when, in fact, no PSA ever existed. Defendant contended plaintiff sought to retain his military pension and not have it equitably distributed in violation of N.J.S.A. 2A:34-23.1. Defendant sought to void and vacate the FJOD and remand the matter to allow her to file an answer and counterclaim. She also sought an award of counsel fees and costs.

In response, plaintiff filed opposition and sought an award of counsel fees and costs. Plaintiff claimed defendant failed to meet her burden of demonstrating excusable neglect, and defendant "was perfectly capable" of understanding that she was "served with process in this matter." Plaintiff stated he was required to "regularly relocate" due to his military position and began

A-4032-24

living in Arkansas in 2021, until he moved to the New York area in 2024. Plaintiff certified defendant "made it clear" she had no intention of living with him on a full-time basis because she had family and a career in New Jersey.

Plaintiff alleged defendant had two affairs during the marriage. Plaintiff certified he wanted to "pursue" a divorce, but defendant did not. Plaintiff stated during interviews about her accident defendant "discussed her quick recovery" and "[a]t no point was there a reference to any mental infirmity of any kind." Plaintiff certified a notice of proposed final judgment was sent to defendant on March 17, 2025, and that he "has been more than accommodating to . . . defendant." Plaintiff opposed defendant's request to restore health insurance on her behalf through his insurer, and her requests for support and equitable distribution.

In her reply certification, defendant reiterated that no PSA exists, and plaintiff never produced a copy of the "alleged" PSA. She also reiterated that she never received a notice of proposed FJOD. Defendant included her case information statement (CIS) in her submission and noted plaintiff failed to provide a CIS or any financial information. Defendant certified it was plaintiff "who ended [their] marriage as a result of his affair[,] which began long before [their] separation." Defendant stated some of her television and news articles

pertaining to her accident were "scripted" as to what she should say, and she was asked by the interviewers to "motivate people" who are "similarly situated."

Defendant certified she "never had an affair while married to [p]laintiff." Defendant asserted plaintiff was the "primary breadwinner" during the marriage, and he paid the expenses with the exception of "shopping," which she paid for when she was working. Defendant certified she was "blindsighted" by plaintiff filing for divorce and placed in a "horrible position without justification, made worse by [her] current condition, as a result of [her] horrific accident."

On July 18, 2025, the judge heard oral argument on the motions. Following arguments, the judge issued an order denying both motions. The judge found defendant did not establish "excusable neglect" under Rule 4:50-1(a) to justify her failure to answer the complaint. The judge noted defendant was living with her mother when she was served with process and was not hospitalized or in rehabilitative care. The judge determined defendant "knew it was a complaint for divorce and threw it away." The judge reasoned this action occurred "eight months" after defendant's "accident" and cannot be "attributed" to her medications.

The judge pointed out the PSA was actually a "draft" PSA that was never signed by defendant, but this "error" was not the basis for defendant's "neglect"

6

in answering the complaint. The judge observed this "error" in plaintiff's certification "is not material" because he did not seek equitable distribution, alimony, or other relief. Therefore, the judge determined under Rule 5:5-10 that there was "no requirement of service on the defaulting party."

In addition, the judge denied defendant's motion seeking to reinstate her health insurance coverage and denied her request to be reinstated as the beneficiary on plaintiff's life insurance policy through his employment. The judge denied defendant's request for support and to compel plaintiff to file a CIS. Both parties' requests for counsel fees were denied. This appeal followed.

Before us, defendant argues:

> (1) the judge abused his discretion in not vacating the FJOD; and
>
> (2) the judge's refusal to vacate the default judgment pursuant to Rule 4:50 is reversible error.

## II.

"[A] Rule 4:50-1 decision rests within 'the sound discretion of the trial court,' and [this court] will not disturb it 'absent an abuse of discretion.'" BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 124 (App. Div. 2021) (quoting Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)). Rule 4:50-1 provides:

On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) <u>mistake, inadvertence, surprise, or excusable neglect</u>; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) <u>any other reason justifying relief from the operation of the judgment or order</u>.

[(Emphasis added).]

"[A] motion for relief from judgment based on any one of the six specified grounds should be granted sparingly." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 4:50-1 (2026); <u>see also</u> <u>In re Guardianship of J.N.H.</u>, 172 N.J. 440, 473-74 (2002). A party may not file a motion for relief from judgment "as a substitute for a timely appeal." <u>In re Est. of Schifftner</u>, 385 N.J. Super. 37, 43 (App. Div. 2006) (quoting <u>Wausau Ins. Co. v. Prudential Prop. & Cas. Ins. Co.</u>, 312 N.J. Super. 516, 519 (App. Div. 1998)). "The [R]ule applies only to final orders and judgments." Pressler & Verniero, cmt. 2 on <u>R.</u> 4:50-1.

A-4032-24

Rule 4:50-1(f) "is the 'elusive catchall category'" for relief. Pressler & Verniero, cmt. 5.6.1 on R. 4:50-1. "No categorization can be made of the situations which would warrant redress under subsection (f). . . . [T]he very essence of [subsection] (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." DEG, LLC v. Township of Fairfield, 198 N.J. 242, 269-70 (2009) (alterations in original) (emphasis added) (quoting Ct. Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). "Whether exceptional circumstances exist is determined on a case by case basis according to the specific facts presented." J.N.H., 172 N.J. at 474.

Courts should consider, among other factors: (1) "the 'extent of the delay in making the application for relief'"; (2) "the underlying reasons or cause"; (3) "fault or blamelessness of the litigant"; and (4) "any prejudice that would accrue to the other party." Ibid. (quoting C.R. v. J.G., 306 N.J. Super. 214, 241 (1997)); see also BV001 REO Blocker, LLC, 467 N.J. Super. at 126. "[T]he correctness or error of the original judgment," however, "is ordinarily an irrelevant consideration." Pressler & Verniero, cmt. 5.6.1 on R. 4:50-1.

> The very purpose of a Rule 4:50 motion is not, as in appellate review, to advance a collateral attack on the correctness of an earlier judgment. Rather, it is to explain why it would no longer be just to enforce that

judgment. The issue is not the rightness or wrongness of the original determination at the time it was made but what has since transpired or been learned to render its enforcement inequitable.

[J.N.H., 172 N.J. at 476 (emphasis added).]

A.

Defendant contends the judge abused his discretion in not vacating the FJOD. Defendant maintains the judge must comply with N.J.S.A. 2A:34-23(h), which provides a court may "effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." Defendant asserts plaintiff has a military pension that was subject to equitable distribution, and the judge's conclusion that no notice of distribution under Rule 5:5-10 was required because plaintiff did not seek equitable distribution was erroneous. We agree.

At the outset, we observe that "a judgment by default is not favored in divorce suits." Curry v. Curry, 108 N.J. Super. 527, 530 (App. Div. 1970) (quoting Grant v. Grant, 84 N.J. Eq. 81, 83 (Ch. 1914)). Where a procedural violation is involved, additional considerations are implicated, namely, "[t]he defendant's right to have the plaintiff comply with procedural rules[, which] conflicts with the plaintiff's right to an adjudication of the controversy on the merits." Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513 (1995)

(quoting Zaccardi v. Becker, 88 N.J. 245, 252 (1982)).  In all cases, however, "justice is the polestar and our procedures must ever be moulded and applied with that in mind."  Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 195 (App. Div. 1985) (quoting N.J. Highway Auth. v. Renner, 18 N.J. 485, 495 (1955)).

Rule 5:5-10 provides, in relevant part:

> In those cases where equitable distribution, alimony, child support and other relief are sought and a default has been entered, the plaintiff shall file and serve on the defaulting party, in accordance with R[ule] 1:5-2, a [n]otice of [p]roposed [f]inal [j]udgment . . . , not less than [twenty] days prior to the hearing date.

The purpose of the notice provisions embodied in Rule 5:5-10 is to avoid problems "proving the identity and value of distributable assets or in the court's power to enter a judgment of distribution" because "the complaint . . . typically allege[s] only that assets were acquired during the marriage and should be equitably distributed without any specification of the assets or their value." Pressler & Verniero, cmt. 1 on R. 5:5-10.

It is beyond cavil that a litigant must meet his or her obligation under the court's rules.  In a family action, the importance of filing a divorce complaint with accurate information and the required notice under Rule 5:5-10 cannot be disputed.  Whereas here, plaintiff misrepresented that "the parties have divided

11

up the marital property, and no claim will be made by either party under equitable distribution other than what has been agreed to in the parties' [PSA]" warrants vacatur of the FJOD.  The filing of notice under Rule 5:5-10 is fundamental to protect the parties' rights in a divorce matter.

The error was compounded here when the judge proceeded to grant the FJOD on an uncontested basis without a PSA or any CIS ever being produced. Therefore, the judge did not have any information regarding the marital estate or lifestyle.  Moreover, plaintiff improvidently advised the judge that since no equitable distribution was sought, no notice under Rule 5:5-10 was required. Consequently, defendant was precluded from receiving her share of equitable distribution, which we conclude was a miscarriage of justice.

Importantly, we note one party's default does not automatically result in the grant of all of the relief sought by the non-defaulting party.  "[T]he moving party still must persuade a court of equity that the relief requested is fair, equitable[,] and appropriate under the totality of the circumstances."  Fichter v. Fichter, 444 N.J. Super. 205, 210 (Ch. Div. 2015).

Defendant correctly posits that military pensions are subject to equitable distribution.  Whitfield v. Whitfield, 222 N.J. Super. 36, 47 (App. Div. 1987). The judge committed reversible error in ordering plaintiff is entitled to keep the

entirety of his military pension. In addition, the judge failed to identify assets and debts subject to equitable distribution and divide them fairly and equitably in derogation of the equitable distribution statute and established case law. See Painter v. Painter, 65 N.J. 196, 208 (1974) (upholding the constitutionality of the equitable distribution statute and identifying the factors to be considered in apportioning marital assets); see also Rothman v. Rothman, 65 N.J. 219, 232 (1974) (requiring the Family Part judge to consider a marriage is akin to a partnership in determining how to equitably distribute assets). Therefore, we vacate the FJOD.

B.

Next, we address defendant's argument that the judge committed reversible error under Rule 4:50-1(a) by refusing to vacate the default and FJOD based on excusable neglect. Defendant maintains she was served with the complaint at a residence that was not her primary residence while "convalescing from a horrific accident and heavily sedated," and plaintiff "knew where to pounce." In addition, defendant reiterates plaintiff and his former attorney "committed fraud" upon the court by stating a PSA existed when one was never entered into. Defendant asserts plaintiff's "fraudulent certification" attached to the complaint violated his oath as a "[non-commissioned officer] in the United

13

States Marine Corp[s] and article 132 of the United States Code of Military Justice."

Here, there was ample evidence to establish excusable neglect under Rule 4:50-1(a). The uncontroverted record demonstrates defendant was served at her mother's residence, not her primary residence, she was convalescing, and she was heavily sedated. There was no evidence that suggested otherwise to support the judge's finding that excusable neglect was not shown. And, there was no support in the record for the judge to conclude that defendant was not heavily sedated eight months after her accident, while recovering from an amputated leg. Moreover, defendant's counsel promptly filed the motion to vacate upon learning it had been entered, which was at the time she attempted to file a divorce complaint on defendant's behalf. We conclude the judge abused his discretion under Rule 4:50-1(a).

We turn our attention next to defendant's argument under Rule 4:50-1(f) and reach the same conclusion. We conclude that because the judge improperly relied on plaintiff's incorrect representation that a PSA had been entered by the parties addressing the division of assets when no PSA ever existed, and since he never disclosed his military pension was subject to equitable distribution, relief is warranted under Rule 4:50-1(f). Here, extraordinary circumstances have been

shown.  Further, the judge proceeded to enter the FJOD on the papers without conducting a hearing because a PSA was represented to have been entered resolving all issues.  This culminated in the entry of the FJOD without notice of entry of default under Rule 5:5-10 being considered.  For these reasons, the FJOD must be vacated, and the July 18, 2025 order is reversed.

In sum we:

(1) vacate the FJOD ab initio;

(2) reverse the July 18, 2025 order;

(3) direct the Family Part clerk to accept defendant's answer, counterclaim, and any other pleadings for filing;

(4) direct both parties to file CIS's forthwith; and

(5) remand for a different Family Part judge to be assigned to handle the case and conduct a case management conference within thirty days.

Vacated, reversed, and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

_M.C. Harley_

Clerk of the Appellate Division

A-4032-24